In the INTEREST OF SHAWNDA G., a person Under the Age of 18:

BROWN COUNTY, Petitioner-Respondent,

v.

MARCELLA G., Respondent-Appellant,

CARLOS H., Respondent. [Case No. 01–0956.]

In the INTEREST OF JEREMIAH I.T., Jr., a person Under the Age of 18:

BROWN COUNTY, Petitioner-Respondent,

v.

MARCELLA G., Respondent-Appellant,

JEREMIAH T., Sr., Respondent. [Case No. 01–0957]

In the INTEREST OF IROQUOIS P.T., a person Under the Age of 18:

BROWN COUNTY, Petitioner-Respondent,

v.

MARCELLA G., Respondent-Appellant,

JEREMIAH, T., Sr., Respondent. [Case No. 01–0958]

In the INTEREST OF AVIA A.T., a person Under the Age of 18:

BROWN COUNTY, Petitioner-Respondent,

v.

MARCELLA G., Respondent-Appellant,

JEREMIAH T., SR., Respondent. [Case No. 01–0959]

Court of Appeals

*Nos. 01–0956, 01–0957, 01–0958, 01–0959. Submitted on briefs June 15, 2001.—Decided July 10, 2001.*

2001 WI App 194

(Also reported in 634 N.W.2d 140.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Tim Provis* of Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Thomas J. Walsh* of *Walsh & Walsh, S.C.* of De Pere.

Before Cane, C.J., Hoover, P.J., and Peterson, J.[1]

¶ 1 CANE, C.J. Marcella G. appeals from orders terminating her parental rights to her four children, three of whom are enrolled members of the Three Affiliated Tribes of the Fort Berthold Reservation, North Dakota (hereafter, the Tribe).[2] Marcella raises a single issue on appeal: whether the circuit court erred when it denied her a hearing on her motion to transfer jurisdiction to the Tribe, pursuant to the Indian Child Welfare Act (ICWA), codified at 25 U.S.C. §§ 1901–1963.

¶ 2. First, we conclude that because Marcella has not raised any issues with respect to the termination of

---

[1] Originally assigned as a one-judge appeal under Wis. Stat. Rule 752.31(2), this case was reassigned to a three-judge panel by order dated June 12, 2001. *See* Wis. Stat. Rule 809.41(3). All statutory references herein refer to the 1999–2000 version unless otherwise noted.

[2] Jeremiah T., Sr., the father of the three children enrolled in the Tribe, is a tribal member, but Marcella is not. Jeremiah's parental rights were also terminated and are not at issue in this appeal.

The Three Affiliated Tribes of the Fort Berthold Reservation, North Dakota, is a federally-recognized Indian tribe. *See* 65 Fed. Reg. 13298, 13301 (March 13, 2000).

her parental rights to Shawnda G., that termination is affirmed.[3] Second, we agree with Marcella that the circuit court erred when it concluded that Marcella had no standing to move for a transfer of jurisdiction to tribal court with respect to the other three children. We conclude that the appropriate remedy is to reverse and remand so that the circuit court can ascertain whether the tribal court will accept jurisdiction and, if so, whether there is good cause to deny Marcella's request to transfer jurisdiction. Therefore, the order concerning Shawnda is affirmed, and the remaining orders are reversed and remanded for further proceedings.

### BACKGROUND

¶ 3. Brown County petitioned to terminate Marcella's parental rights to her four children. The Tribe filed a motion to transfer jurisdiction with respect to three of the children to the Fort Berthold Tribal Court, pursuant to the ICWA. In support of its motion, the Tribe filed with the circuit court a tribal court order accepting jurisdiction. A motion hearing was scheduled so that the circuit court could determine whether there was good cause not to transfer the case. *See* 25 U.S.C. § 1911(b).

¶ 4. At the motion hearing, the Tribe and the County presented a memorandum of understanding in which the Tribe withdrew its motion to transfer jurisdiction and reserved its right to file future motions to transfer jurisdiction at any point prior to a completed adoption. Neither the Tribe nor the County presented

---

[3] In her reply brief, Marcella concedes that the single issue raised in her appeal does not concern the order terminating her rights to Shawnda G.

the court with any documentation suggesting that the tribal court had withdrawn its order accepting jurisdiction.

¶ 5. Counsel for Marcella objected to the memorandum and moved the circuit court to transfer jurisdiction to the tribal court. The court and the Tribe's attorney discussed this request:

> [CIRCUIT COURT]: Well, I'm satisfied that under the law, [tribal attorney,] your clients alone have the standing to initiate this request as a sovereign nation, and if your clients, [the Tribe], are asking to have their motion withdrawn, then no other party has any standing to make this request. Do you agree with that?
>
> [TRIBAL ATTORNEY]: I agree with that, your Honor.
>
> [CIRCUIT COURT]: All right. Then I'm going to grant the motion of [the Tribe] without prejudice and reserving to them the right to renew this motion at any time they feel it's in the interests of their nation to do so to withdraw their motion to transfer [jurisdiction].

The four termination cases proceeded in the circuit court.[4] Ultimately, Marcella pled no contest to the petitions and the circuit court found that it was in the children's best interests to terminate Marcella's parental rights. This appeal followed.

### DISCUSSION

¶ 6. Resolution of this appeal requires statutory interpretation of the ICWA, a question of law this court

---

[4] It does not appear that Marcella subsequently renewed her request to transfer jurisdiction to the tribal court. However, the County does not argue that she waived the issue by failing to do so.

reviews de novo. *See In re D.S.P.*, 166 Wis. 2d 464, 471, 480 N.W.2d 234 (1992).[5] At issue is 25 U.S.C. § 1911(b), pursuant to which states and tribes share concurrent jurisdiction, in foster care placement and parental rights termination cases, over an Indian child not domiciled or living within the reservation of the child's tribe.[6] The statute provides the procedure for determining whether the state or the tribe will exercise jurisdiction:

---

[5] The ICWA was created in 1978 in response to mounting evidence that Indian children were being separated from their families and adopted into non-Indian homes. *See Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 32–37 (1989) (detailing legislative history of the ICWA).

On appeal, the parties do not dispute the applicability of the ICWA; at issue is whether it was correctly applied. We recognize, however, that some courts in other jurisdictions have refused to apply the ICWA unless an Indian child is being removed from an existing Indian family (*i.e.,* a family with significant connection to the Indian community). *See, e.g., In re Baby Boy L.*, 643 P.2d 168, 175–76 (Kan. 1982) (adopting the "existing Indian family" exception). Other courts have explicitly declined to adopt the exception. *See, e.g., Michael J., Jr. v. Michael J., Sr.*, 7 P.3d 960, 963 (Az. App. 2000) (rejecting judicially-created exception to the ICWA). Wisconsin courts have not addressed the potential application of the exception. Because neither party addresses its potential application here, even though Marcella is not a tribal member and the children are not living on the Tribe's reservation, we do not consider the issue and, instead, will assume that the ICWA applies.

[6] In contrast, an Indian tribe has exclusive jurisdiction, in foster care placement and parental rights termination cases, over an Indian child who resides or is domiciled within his or her reservation. *See* 25 U.S.C. § 1911(a).

**Transfer of proceedings; declination by tribal court**

In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: *Provided,* That such transfer shall be subject to declination by the tribal court of such tribe.

¶ 7. Pursuant to the plain language of 25 U.S.C. § 1911(b), "either parent or the Indian custodian or the Indian child's tribe" may request a transfer of jurisdiction. Marcella, as a parent, was therefore entitled to request a transfer of jurisdiction. Accordingly, the circuit court erred when it concluded that Marcella lacked standing to do so. *See id.*

██

¶ 8. Our conclusion is consistent with both the plain language of 25 U.S.C. § 1911(b) and with the Bureau of Indian Affairs Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67584–95 (1979). Our supreme court has recognized that these guidelines, although not binding on courts, are helpful and should be considered when deciding issues under the ICWA. *See D.S.P.,* 166 Wis. 2d at 477.

¶ 9. The guidelines provide that with respect to petitions for transfer filed under 25 U.S.C. § 1911(b), "Either parent, the Indian custodian or the Indian child's tribe may, orally or in writing, request the court to transfer the Indian child custody proceeding to the tribal court of the child's tribe." *See* 44 Fed. Reg. at 67590. The guidelines further state:

**C.2. Criteria and Procedures for Ruling on 25 U.S.C. § 1911(b) Transfer Petitions**

a. Upon receipt of a petition to transfer . . . the court must transfer unless either parent objects to such transfer, the tribal court declines jurisdiction, or the court determines that good cause to the contrary exists for denying the transfer.

b. If the court believes or any party asserts that good cause to the contrary exists, the reasons for such belief or assertion shall be stated in writing and made available to the parties who are petitioning for transfer. The petitioners shall have the opportunity to provide the court with their views on whether or not good cause to deny transfer exists.

*Id.* at 67590–91.

¶ 10. The parties suggest no reason not to apply the guidelines in this case.[7] It is undisputed that Marcella orally requested a transfer of jurisdiction. In the absence of an objection by the other parent or a declination of jurisdiction by the tribal court, *see* 25 U.S.C. § 1911(b), the circuit court had an obligation to transfer the case to tribal court unless it determined that good cause existed to deny the request. *See* 44 Fed. Reg. at 67590–91. Pursuant to the guidelines, where the court believes or any party asserts that good cause to deny the transfer exists, the petitioners "shall have the opportunity to provide the court with their views on whether or not good cause to deny transfer exists." *See id.* Accordingly, the circuit court erred when it immediately rejected Marcella's request.

---

[7] Other courts have likewise found the guidelines helpful in evaluating requests to transfer jurisdiction under 25 U.S.C. § 1911(b). *See In re M.E.M.*, 635 P.2d 1313, 1317 (Mont. 1981); *In re Laurie R.*, 760 P.2d 1295, 1299 (N.M. App. 1988); *In re M.C.*, 504 N.W.2d 598, 601 (S.D. 1993).

¶ 11. The County agrees that a parent has standing to request a transfer, and that a parent can orally submit a request. *See* 25 U.S.C. § 1911(b); 44 Fed. Reg. at 67590. However, the County argues that the termination should be affirmed because the Tribe's withdrawal of its motion to transfer imposed a duty on Marcella to ask the tribal court to accept jurisdiction. The County asserts that no hearing on Marcella's motion was necessary because Marcella "never requested that the Tribal Court take jurisdiction over those three children and the Tribe was no longer willing to support that transfer when it agreed to the Memorandum of Understanding." We disagree with the County's conclusions.

¶ 12. First, the tribal court had already issued an order accepting jurisdiction over the cases, which the Tribe provided to the circuit court in support of its motion to transfer. There is nothing in the record to suggest that the tribal court subsequently declined jurisdiction.[8] Furthermore, Marcella's counsel explained to the circuit court that before the Tribe withdrew its motion, Marcella's desire to transfer jurisdiction had been consistent with the Tribe's own motion, pursuant to which the Tribe had procured the

---

[8] We note that the Tribe's memorandum of understanding could not implicitly or explicitly decline jurisdiction or reverse the tribal court's order accepting jurisdiction because the Tribe and the tribal court are distinct legal entities. *See* 25 U.S.C. §§ 1903(8) and (12) (defining Indian tribe and tribal court); *In re C.Y.*, 925 P.2d 447, 449 (Kan. App. 1996) (recognizing distinction of tribal court and tribe and the need for tribal court, as opposed to tribe, to decline jurisdiction in the ICWA case).

tribal court order accepting jurisdiction.[9] Until the Tribe withdrew its request for transfer, there was no reason for Marcella to duplicate the Tribe's efforts.

¶ 13. Additionally, even if there had been no tribal court order in the record, 25 U.S.C. § 1911(b) does not specifically require that Marcella personally obtain a tribal court order accepting jurisdiction. The guidelines indicate that once a state court is asked to transfer jurisdiction, the court has an obligation to ascertain whether the tribal court is declining jurisdiction. The guidelines provide:

**C.4. Tribal Court Declination of Transfer**

a. A tribal court to which transfer is requested may decline to accept such transfer.

b. Upon receipt of a transfer petition the state court shall notify the tribal court in writing of the proposed transfer. The notice shall state how long the tribal court has to make its decision. The tribal court shall have at least twenty days from the receipt of notice of a proposed transfer to decide whether to decline the transfer. The tribal court may inform the state court of its decision to decline either orally or in writing.

c. Parties shall file with the tribal court any arguments they wish to make either for or against tribal declination of transfer. Such arguments shall be made orally in open court or in written pleadings that are served on all other parties.

d. If the case is transferred the state court shall provide the tribal court with all available information on the case.

44 Fed. Reg. at 67592.

---

[9] Indeed, if Marcella had opposed the transfer, her objection alone would have defeated the Tribe's request to transfer jurisdiction. *See* 25 U.S.C. § 1911(b).

167

¶ 14. Pursuant to the guidelines, once the circuit court received Marcella's request for transfer, it should have notified the tribal court of the proposed transfer.[10] It is undisputed that the circuit court made no attempt to contact the tribal court before rejecting Marcella's request. This is understandable, given the Tribal attorney's erroneous assertion that the Tribe alone had standing to request a transfer.[11] Nevertheless, the fact remains that the circuit court erroneously denied Marcella's request for transfer without first ascertaining whether the tribal court would accept jurisdiction and, if so, determining whether there was good cause to deny the transfer.[12]

---

[10] Arguably, the fact that there was already an existing tribal court order accepting jurisdiction means the circuit court could have assumed, absent evidence to the contrary, that the tribal court would continue to accept jurisdiction. However, given that the Tribe had procured the tribal court order in support of its motion to transfer and was now withdrawing the motion, it would also have been reasonable for the circuit court to question whether the tribal court was still willing to accept jurisdiction. In that case, the court should have contacted the tribal court to ascertain its intentions.

[11] Additionally, although the County on appeal disagrees with the circuit court's conclusion that Marcella lacked standing to request a transfer of jurisdiction, it does not appear that the County shared this opinion with the circuit court. Had the County done so, the circuit court would have had an opportunity to correct its error.

[12] We note that a state court need not contact the tribal court or consider whether good cause exists to deny the request for transfer if either parent objects to the transfer. *See* 25 U.S.C. § 1911(b). Here, neither party suggests that Jeremiah T., Sr., objected, and Marcella sought the transfer, so we do not consider this possibility further.

168

¶ 15. Having concluded that the circuit court erred, we next consider the appropriate remedy. Marcella suggests that the orders should be reversed and remanded "for a proper jurisdictional hearing under the ICWA." Neither she nor the County address what should happen if the circuit court finds good cause to deny transfer or if the tribal court declines jurisdiction.

██

¶ 16. We conclude that reversal is appropriate and, on remand, direct the circuit court to first ascertain whether the tribal court will accept jurisdiction. If the tribal court indicates that it will accept jurisdiction, then the circuit court must transfer jurisdiction unless it determines that good cause exists for denying the transfer. *See* 25 U.S.C. § 1911(b); 44 Fed. Reg. at 67590–91 (outlining procedures for parties to contest the transfer). Marcella, as petitioner for the transfer, "shall have the opportunity to provide the court with [her] views on whether or not good cause to deny transfer exists."[13] *See* 44 Fed. Reg. at 67590–91.

---

[13] Marcella has specifically requested a "jurisdictional hearing" on her motion. Neither 25 U.S.C. § 1911(b) nor the guidelines explicitly require a "jurisdictional hearing." Nonetheless, several courts have held that a jurisdictional hearing is required to provide litigants with due process. *See, e.g., In re G.L.O.C.*, 668 P.2d 235, 237 (Mont. 1983) (a jurisdictional hearing is required before the court can enter an order either granting or denying a request for the transfer of jurisdiction of Indian children to tribal custody). Conversely, at least one court has suggested that a hearing is not always required. *See In re J.L.P.*, 870 P.2d 1252, 1259 (Colo. App. 1994) (due process was afforded to all parties where court heard argument on request for transfer of jurisdiction, requested additional briefing on the issue of good cause, reserved right to rule on transfer of jurisdiction without further hearings, and issued ruling without further hearings). In this case, we suggest that the most

¶ 17. The guidelines, as well as case law interpreting 25 U.S.C. § 1911(b), will provide a framework for the circuit court's good cause analysis. The guidelines state:

**C.3. Determination of Good Cause to the Contrary**

a. Good cause not to transfer the proceeding exists if the Indian child's tribe does not have a tribal court as defined by the Act to which the case can be transferred.

b. Good cause not to transfer this proceeding may exist if any of the following circumstances exists:

i. The proceeding was at an advanced stage when the petition to transfer was received and the petitioner did not file the petition promptly after receiving notice of the hearing.

ii. The Indian child is over twelve years of age and objects to the transfer.

iii. The evidence necessary to decide the case could not be adequately presented in the tribal court without undue hardship to the parties or the witnesses.

iv. The parents of a child over five years of age are not available and the child has had little or no contact with the child's tribe or members of the child's tribe.

c. Socio-economic conditions and the perceived adequacy of tribal or Bureau of Indian Affairs social services or judicial systems may not be considered in a determination that good cause exists.

---

efficient manner of providing Marcella with the requisite opportunity to be heard will be to give her the hearing she requests. However, we do not decide whether an alternative approach, *e.g.*, the submission of written briefs, would violate any party's due process rights.

d. The burden of establishing good cause to the contrary shall be on the party opposing the transfer.

44 Fed. Reg. at 67591.

¶ 18. If the circuit court concludes there is no good cause to deny the request to transfer, then it shall order that jurisdiction over the three cases be transferred to the tribal court for further proceedings. If, however, the circuit court finds there is good cause not to transfer jurisdiction to the Tribal court, or if the Tribal court declines jurisdiction, then the circuit court will retain jurisdiction. In that case, because Marcella has not sought to withdraw her no contest pleas or to challenge the circuit court's findings of fact and conclusions of law, the circuit court may exercise its discretion and enter a new order incorporating the previous findings and conclusions without holding additional evidentiary hearings.

*By the Court.*—Orders affirmed in part; reversed in part and causes remanded with directions.